# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SOFIENE ROMDHANI, MICHELLE MALONEY, and BOBBI JOE ZELLER,<br><br>Plaintiffs,<br><br>v.<br><br>EXXON MOBIL CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)　　Civil Action No. 07-715 (JJF)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT EXXON MOBIL CORPORATION'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS AND TO STRIKE

OF COUNSEL:

Joe Robert Caldwell, Jr.
Benjamin Kringer
Rachel M. McKenzie
BAKER BOTTS LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004-2400
(202) 639-7700

Dated: December 20, 2007
839159

Kathleen Furey McDonough (#2395)
Sarah E. DiLuzio (#4085)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19801
(302) 984-6000

Attorneys for Defendant
Exxon Mobil Corporation

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................. ii

NATURE AND STAGE OF PROCEEDINGS ............................................. 1

SUMMARY OF ARGUMENT ....................................................................... 2

STATEMENT OF FACTS ............................................................................... 3

ARGUMENT ..................................................................................................... 5

I.      PLAINTIFF ROMDHANI'S CLAIMS UNDER THE DELAWARE DISCRIMINATION IN EMPLOYMENT ACT SHOULD BE DISMISSED ......................................................................................... 5

     A.      Standard of Review ..................................................................... 5

     B.      Counts VII, VIII, and IX Should Be Dismissed Because the DDEA Prohibits Plaintiffs from Pursuing Both Federal and State Remedies for Employment Discrimination ................................. 5

II.      PLAINTIFFS HAVE INCLUDED ALLEGATIONS IN THE COMPLAINT THAT SHOULD BE STRICKEN AS REDUNDANT, IMMATERIAL, IMPERTINENT OR SALACIOUS PURSUANT TO FED. R. CIV. P. 12 (F) ......................................................................... 7

     A.      Standard of Review ..................................................................... 8

     B.      Text of Contested Statements .................................................... 9

     C.      Paragraph 40 of the Complaint Is Immaterial to Plaintiff Romdhani's Causes of Action and Prejudices the Defendant ................. 11

     D.      Paragraphs 50, 51, 69, 70, 76, and 77 of the Complaint Are Immaterial to Plaintiffs Maloney and Zeller's Causes of Action and Prejudice the Defendant .................................................... 12

     E.      Paragraphs 71 and 75 of the Complaint Are Immaterial to Plaintiff Zeller's Causes of Action and Prejudice the Defendant ........................... 14

CONCLUSION ................................................................................................ 17

## TABLE OF AUTHORITIES

**CASES**

*Abbott Diabetes Care, Inc. v. Dexcom, Inc.,*
    WL 2892707 (D.Del. Sep. 30, 2007) ................................................................................8

*Andreoli v. Gates,*
    482 F.3d 641 (3d Cir. 2007) ..........................................................................................14

*Bauer v. Beneficial Consumer Discount Co.,*
    2007 WL 4269804 (W.D. Pa. Dec. 3, 2007) ....................................................................8

*Blozis v. Mellon Trust of Delaware Nat. Ass'n,*
    494 F. Supp. 2d 258 (D.Del. 2007) .................................................................................7

*Burger v. Health Ins. Plan of Greater New York,*
    684 F.Supp. 46 (S.D.N.Y. 1988) ............................................................................12, 13

*Burlington Indus., Inc. v. Ellerth,*
    524 U.S. 742 (1998) .....................................................................................................15

*Christian v. Illinois Bd. of Educ,*
    2007 WL 2088735 (N.D. Ill July 19, 2007) ............................................................15, 16

*Cromwell v. Washington Metro. Area Transit Auth.,*
    2006 WL 2568009 (D.D.C. Sept. 5, 2006) ...................................................................15

*D.P. Enter., Inc. v. Bucks County Cmty. Coll.,*
    725 F.2d 943 (3d Cir. 1984)............................................................................................5

*Defazio v. River City Brass Band, Inc.,*
    2007 WL 3072257 (W.D. Pa. Oct. 19, 2007) ................................................................11

*Despanie v. Henderson, 3*
    2 Fed. Appx. 390, 392 (9th Cir. 2002) ..........................................................................15

*Kounitz v. Slaatten,*
    901 F. Supp. 650 (S.D.N.Y. 1995) ...............................................................................13

*Lewis v. Univ. of Pittsburgh,*
    725 F.2d 910 (3d Cir. 1983)..........................................................................................14

*Lundy v. Town of Brighton,*
    2007 WL 3312475 (W.D.N.Y. Nov. 9, 2007) ...............................................................8, 9

*McInerney v. Moyer Lumber & Hardware, Inc.*,
    244 F. Supp. 2d 393 (E.D. Pa. 2002) ...................................................................8

*Mease v. Wilmington Trust Co.*,
    2007 WL 901550 (D.Del. March 26, 2007)...........................................................6

*Morse v. Lower Merion School District*,
    132 F.3d 902 (3d Cir. 1997)...................................................................................5

*Phillips v. Household Fin. Corp.*,
    2007 WL 1830897 (D.Del. June 25, 2007)...........................................................7

*Roe v. City of New York*,
    151 F. Supp. 2d 495 (S.D.N.Y. 2001)....................................................................8

*Saint Francis College v. Al-Khazraji*,
    481 U.S. 604 (1987)..............................................................................................12

*Sarullo v. U.S. Postal Service*,
    352 F.3d 789 (3d Cir. 2003).................................................................................14

*Schlifke v. Trans World Entm't Corp.*,
    479 F. Supp. 2d 445 (D.Del. 2007).......................................................................7

*Spriggs v. Pub. Serv. Comm'n of Md.*,
    197 F. Supp. 2d 388 (D. Md. 2002).....................................................................15

*Storey v. Burns Int'l Sec. Servs.*,
    390 F.3d 760 (3d Cir. 2004).................................................................................15

*Synthes (U.S.A.) v. Globus Medical, Inc.*,
    2007 WL 1001587 (E.D. Pa. March 29, 2007).....................................................8

*Taylor v. Small*,
    350 F.3d 1286 (D.C. Cir. 2003) ..........................................................................15

*Toll v. American Airlines, Inc.*,
    166 Fed. Appx. 633, 636 (3d Cir. 2006)..............................................................15

*Verdin v. Weeks Marine, Inc.*,
    124 Fed. Appx. 92, 97 (3d Cir. 2005)..................................................................14

*Witcher v. Sodexho, Inc.*,
    478 F. Supp. 2d 663 (D.Del. 2007).....................................................................6-7

**STATUTES**

Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ....................................................6

Civil Rights Act of 1866, 42 U.S.C. § 1981 .......................................................................1, 4, 12

Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e *et seq.* .............................................1, 4, 5

Fed. R. Civ. P. 12(b)(6)..................................................................................................................2, 5

Fed. R. Civ. P. 12(f)......................................................................................................................2, 8

Delaware Discrimination in Employment Act, 19 Del. C. § 710 *et seq* ............................1, 2, 4, 5

    19 Del. C. § 710 .....................................................................................................................6

    19 Del. C. § 711(a)(1) ...........................................................................................................6

    19 Del. C. § 711(f) ................................................................................................................6

    19 Del. C. § 714(c)................................................................................................................6

## NATURE AND STAGE OF PROCEEDINGS

Plaintiffs Sofiene Romdhani, Michelle Maloney, and Bobbi Joe Zeller, former employees of Station Operators Inc. ("Station Operators"), filed their Complaint in this Court on November 5, 2007. (D.I. 1). Exxon Mobil Corporation ("ExxonMobil"), the ultimate parent company of Station Operators, is the named defendant in the action. In the Complaint, Plaintiff Romdhani alleges that ExxonMobil discriminated and retaliated against him in violation of the Civil Rights Act of 1866 (42 U.S.C. § 1981) ("Section 1981"), Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) ("Title VII"), and the Delaware Discrimination in Employment Act (19 Del. C. § 710 *et seq.*) (the "DDEA"). Plaintiffs Maloney and Zeller allege that ExxonMobil discriminated and retaliated against them in violation of Section 1981.

The Complaint was subsequently served on Defendant ExxonMobil and, by order of this Court, ExxonMobil's time to answer or otherwise respond to the Complaint was extended to December 20, 2007. (D.I. 7). ExxonMobil has filed a Motion to Dismiss and to Strike. This is ExxonMobil's Opening Brief in support of that motion.

1

## SUMMARY OF ARGUMENT

1.    Plaintiff Romdhani is not entitled to relief against Defendant Exxon Mobil Corporation ("ExxonMobil") under the Delaware Discrimination in Employment Act (19 Del. C. § 710 *et seq.*)  (the "DDEA") because the DDEA requires claimants to elect *either* federal *or* state remedies for employment discrimination, but prohibits the pursuit of both.  Accordingly, Counts VII, VIII, and IX of the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

2.    The Complaint contains certain allegations that are both immaterial to Plaintiffs' stated causes of action and prejudicial to Defendant ExxonMobil.  Accordingly, those allegations should be stricken as redundant, immaterial, impertinent or salacious pursuant to Fed. R. Civ. P. 12(f).

## **STATEMENT OF FACTS**

Station Operators Inc., d/b/a ExxonMobil CORS ("Station Operators"), a Delaware corporation, is a wholly-owned subsidiary of ExxonMobil Oil Corporation ("EMOC"), a New York corporation. Station Operators is responsible for operating the retail service stations owned or leased by EMOC. EMOC is a wholly-owned subsidiary of Mobil Corporation, a Delaware corporation, which in turn is a wholly-owned subsidiary of Defendant Exxon Mobil Corporation ("ExxonMobil"), a New Jersey corporation.

Plaintiff Sofiene Romdhani, a Muslim man native to Tunisia, was hired by Station Operators on July 31, 2003, to serve as an Assistant Manager of Store Number 25726, a retail service station located on the Delaware Turnpike (the "Station"). Compl. ¶ 10 (D.I. 1). Romdhani became the Station's Manager in May 2005 and remained in that position until he resigned on September 21, 2006. *Id.* at ¶¶ 11, 38. Based on events alleged to have occurred prior to his resignation, Romdhani filed a Charge of Discrimination against ExxonMobil with both the Equal Employment Opportunity Commission ("EEOC") and the Delaware Department of Labor ("DDOL") on October 31, 2006. *Id.* at ¶ 40.

Plaintiff Michelle Maloney, a Caucasian woman, was hired by Station Operators in March 2005 to serve as a cashier at the Station. *Id.* at ¶¶ 7, 42. Approximately one year later, Maloney converted to Islam. *Id.* at ¶ 43. She continued to serve as a cashier at the Station until she resigned on or about August 4, 2007. *Id.* at ¶ 7, 58.

Plaintiff Bobbi Joe Zeller, also a Caucasian woman, was hired by Station Operators in December 2005 to serve as a cashier at the Station. *Id.* at ¶ 8. Like Maloney, Zeller converted to Islam in "early 2006." *Id.* at ¶ 62. She continued to serve as a cashier at the Station until her employment was terminated on May 21, 2007. *Id.* at ¶ 8, 82.

3

On November 5, 2007, Plaintiffs Romdhani, Maloney, and Zeller initiated this lawsuit against Defendant ExxonMobil, the ultimate parent company of Station Operators, asserting various claims of employment discrimination based on events alleged to have occurred prior to their leaving Station Operators' employ. (D.I. 1). Specifically, Plaintiff Romdhani alleges in the Complaint that ExxonMobil: (1) discriminated against and harassed him on the basis of his race in violation of the Civil Rights Act of 1866 (42 U.S.C. § 1981) ("Section 1981") (Counts I and III); (2) discriminated against and harassed him on the basis of his race, religion, and national origin in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e *et seq.*) ("Title VII") and the Delaware Discrimination in Employment Act (19 Del. C. § 710 *et seq.*) (the "DDEA") (Counts IV and VII); (3) retaliated against him for engaging in protected activity in violation of Section 1981, Title VII, and the DDEA (Counts II, VI, and IX); and (4) failed to provide him reasonable religious accommodations in violation of Title VII and the DDEA (Counts V and VIII). Plaintiffs Maloney and Zeller allege that ExxonMobil: (1) discriminated against them on the basis of race in violation of Section 1981 (Count I); and (2) retaliated against them for engaging in protected activity in violation of Section 1981 (Count II).

**ARGUMENT**

I.    **PLAINTIFF ROMDHANI'S CLAIMS UNDER THE DELAWARE DISCRIMINATION IN EMPLOYMENT ACT SHOULD BE DISMISSED**

Dismissal of a complaint, or portions thereof, is warranted if a plaintiff has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Plaintiff Sofiene Romdhani is not entitled to relief under the Delaware Discrimination in Employment Act (19 Del. C. § 710 *et seq.*) (the "DDEA") because the DDEA requires claimants to elect *either* federal *or* state remedies for employment discrimination, but prohibits the pursuit of both in federal court. Accordingly, Romdhani's claims under the DDEA—Counts VII, VIII, and IX of the Complaint—should be dismissed under Rule 12(b)(6).

A.    **Standard of Review**

A motion to dismiss under Rule 12(b)(6) should be granted "if it appears to a certainty that no relief could be granted under any set of facts which could be proved." *D.P. Enter., Inc. v. Bucks County Cmty. Coll.*, 725 F.2d 943, 944 (3d Cir. 1984). When considering a Rule 12(b)(6) motion, a court is "required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997) (internal citations omitted). A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Id.* (internal citations omitted).

B.    **Counts VII, VIII, and IX Should Be Dismissed Because the DDEA Prohibits Plaintiffs from Pursuing Both Federal and State Remedies for Employment Discrimination**

In this case, Plaintiff Romdhani has sued Defendant Exxon Mobil Corporation ("ExxonMobil") for violations of both Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) ("Title VII") and the DDEA under parallel causes of action based on an identical

series of alleged facts. The DDEA, however, requires plaintiffs to make an election of remedies, and does not allow plaintiffs to seek relief under the DDEA once they have chosen to pursue federal remedies in federal court.

The DDEA is modeled closely on Title VII and the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 *et seq.*) (the "ADEA"), establishing that as a matter of Delaware law, it is an unlawful employment practice for an employer to "fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to compensation, terms, or conditions or privileges of employment because of such individual's race, marital status, genetic information, color, age, religion, sex or national origin . . . ." 19 Del. C. § 711(a)(1). Like Title VII, the DDEA defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that the employer is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 19 Del. C. § 710. Like both Title VII and the ADEA, the DDEA specifically prohibits retaliatory discrimination. *See* 19 Del. C. § 711(f).

The DDEA also provides, however, that a plaintiff

> shall elect a Delaware or federal forum to prosecute the employment discrimination cause of action so as to avoid unnecessary costs, delays and duplicative litigation. A charging party is barred by this election of remedies from filing cases in both [State] Superior Court and the federal forum.

19 Del. C. § 714(c). Recently, and in numerous cases, this Court has held that by pursuing claims for employment discrimination in federal court, a plaintiff makes "an 'election of [federal] remedies,' not just an election of forum," *Mease v. Wilmington Trust Co.*, 2007 WL 901550, at *2 (D.Del. March 26, 2007), and is "precluded [under 19 Del. C. § 714(c)] from concomitantly pursuing state claims under the DDEA," *Witcher v. Sodexho, Inc.*, 478 F. Supp.

2d 663, 667 n.5 (D.Del. 2007). The DDEA, in other words, forbids a plaintiff seeking federal remedies for discrimination to pursue simultaneously Delaware remedies for that alleged discrimination. *See Phillips v. Household Fin. Corp.*, 2007 WL 1830897, at *4 (D.Del. June 25, 2007) (declining to exercise supplemental jurisdiction over state law claims for gender discrimination and sexual harassment because "the DDEA bars Plaintiff from seeking remedies for employment discrimination under both federal and state law in the federal forum"); *Blozis v. Mellon Trust of Delaware Nat. Ass'n*, 494 F. Supp. 2d 258, 270 n.15 (D.Del. 2007) (holding that "plaintiff, having elected to prosecute her age discrimination and retaliation claims under the ADEA, is barred from seeking remedies provided by the DDEA pursuant to her election of this federal forum"); *Schlifke v. Trans World Entm't Corp.*, 479 F. Supp. 2d 445, 450 n.8 (D.Del. 2007) (same).

Because Plaintiff Romdhani is seeking relief in federal court under Title VII for Defendant ExxonMobil's alleged discrimination, retaliation, and failure to provide reasonable religious accommodations, 19 Del. C. § 714 effectively strips him of parallel causes of action under the DDEA. Accordingly, there is no set of facts Romdhani could prove that would entitle him to relief on his DDEA claims—Counts VII, VIII, and IX of the Complaint—and those claims should be dismissed.

## II.    PLAINTIFFS HAVE INCLUDED ALLEGATIONS IN THE COMPLAINT THAT SHOULD BE STRICKEN AS REDUNDANT, IMMATERIAL, IMPERTINENT OR SALACIOUS PURSUANT TO FED. R. CIV. P. 12(F)

Plaintiffs' Complaint takes the "everything but the kitchen sink" approach, listing every possible allegation that could conceivably cast Defendant ExxonMobil in a negative light. Not only are the allegations littered with inaccuracies and outright fabrications, but some, even if taken as true, would not support the causes of action asserted in the Complaint. In order to narrow the scope of litigation and preserve judicial resources, Defendant ExxonMobil

respectfully requests that the Court strike those portions of the Complaint that are both immaterial and prejudicial to Defendant pursuant to Fed. R. Civ. P. 12(f). Defendant makes this request in addition to, and without waiving the objections raised in, its Rule 12(b)(6) argument *supra*.

### A.    Standard of Review

It is within a court's discretion to strike any portion of a pleading that is both immaterial to a plaintiff's cause of action and prejudicial to the defendant. Fed. R. Civ. P. 12(f) (a court may strike "any redundant, immaterial, impertinent, or scandalous matter"); *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, 2007 WL 2892707, at *2 (D.Del. Sep. 30, 2007); *Bauer v. Beneficial Consumer Discount Co.*, 2007 WL 4269804, at *6 (W.D. Pa. Dec. 3, 2007) (Rule 12(f) "is permissive so that the Court has a wide measure of discretion in determining whether to grant or deny a motion under it") (internal citations omitted). To prevail on a motion to strike, the movant must show that the allegations have no bearing on the relevant issues and that permitting the allegations to stand would result in prejudice to the movant. *See Lundy v. Town of Brighton*, 2007 WL 3312475, at *5 (W.D.N.Y. Nov. 9, 2007) (citing *Roe v. City of New York*, 151 F. Supp. 2d 495 (S.D.N.Y. 2001)).

While motions to strike are disfavored generally, "they do serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues that would not affect the outcome of the case." *Synthes (U.S.A.) v. Globus Medical, Inc.*, 2007 WL 1001587, at *1 (E.D. Pa. March 29, 2007); *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002) (a motion to strike can clean up the pleadings, streamline litigation, and help avoid wasting judicial resources on immaterial matters). A motion to strike should be granted where a court can narrow the scope of the litigation and thereby minimize delay and expense. *Lundy*, 2007 WL 3312475 at *5 ("[t]he

purpose of Fed. R. Civ. Proc. 12(f) is to minimize delay, prejudice and confusion by narrowing

the issues for discovery and trial").

**B.    Text of Contested Statements**

- Complaint at ¶ 40:  On May 31, 2007, after a lengthy and thorough investigation, the DDOL issued a final Determination in Mr. Romdhani's case, finding cause to believe that Mr. Romdhani had been subjected to unlawful discrimination during his employment at Exxon.  The DDOL concluded that Mr. Romdhani had been subjected to unduly harsh treatment, unjustified discipline, and unfair pay decisions because of his race, religion and national origin, and noted that "witnesses corroborated Charging Party's allegations that he was continually subjected to harassment by his supervisor in regards to his religious beliefs and national origin."   When the DDOL scheduled a mandatory "Conciliation Meeting" between the parties in order to attempt to work out a resolution of the matter, Exxon's representatives refused to attend.

- Complaint ¶ 50:  In late 2006, Mr. Harden changed the work schedule for Ms. Maloney and several of her coworkers.  Whereas Ms. Maloney previously had Fridays off, Mr. Harden informed her that she would now be working on Fridays. Ms. Maloney informed Mr. Harden that it was important for her to have Fridays off of work, or at least be given a brief leave period in the afternoon, so that she could attend her Muslim prayer services.  There were many different employees at the Station who worked many different schedules, and Mr. Harden could just as easily have given Ms. Maloney a schedule that permitted this religious accommodation.  In response, Mr. Harden told Ms. Maloney that her request to attend prayer services was "not a legit reason" to have off, and refused even to permit her two hours off on Fridays to attend prayer.

- Complaint ¶ 51:  Ms. Maloney again contacted Mr. Arnold and notified him that she was entitled to be accommodated at work such that she could attend to her religious obligations.  A few days later, he and Mr. Harden came into Ms. Maloney's cashier's booth and asked her "What's the problem, why are you and others screaming discrimination?"  Ms. Maloney informed him that Mr. Harden had changed her schedule so that she could no longer attend her Muslim prayers on Fridays.  Mr. Arnold replied, "I am not here to accommodate your religious beliefs.  I am running a business, not a religious community."  When Ms. Maloney advised Mr. Arnold that she believed he had to make her basic accommodations for her religious practices, he stated, "I don't have to do anything."  Mr. Arnold told Ms. Maloney that "At the end, it'll be just me and Corey [Harden] standing."  He further threatened "I'll get each and every one of you out of here."

- Complaint ¶ 69:  Although it had never been the practice of the Station in the past, Mr. Harden also began assigning Ms. Zeller to go into the men's bathroom to

make sure there was enough towels and toilet paper. In the past, male employees checked the men's bathroom and female employees checked the women's bathrooms, since the bathrooms remained open while these checks occurred. In addition, even though the Station employed a contract employee who was assigned to clean the bathrooms three times a day, Mr. Harden assigned Ms. Zeller to clean the men's bathroom. When Mr. Harden asked her to do these things, Ms. Zeller explained to him that her religion did not permit her to be in a location where men were undressed. She noted that there were plenty of male employees available to perform this task, as they had done in the past, and she offered instead to check the women's bathroom as she had done many times in the past. Mr. Harden refused this offer and told Ms. Zeller that she would have to bring in materials to him to "prove" the requirements of her religion.

- Complaint ¶ 70: In response to Mr. Harden's request that she provide him with documentation regarding the requirements of her religion, Ms. Zeller brought him a book entitled Muslim Women's Dress Code and three chapters from the Qu'ran. Ms. Zeller had explained to Mr. Harden that she could not go into the Men's bathroom while there were men using it, and also that her religion required that she not tuck in her shirt so that it did not reveal her figure. In a hostile and dismissive tone, Mr. Harden told Ms. Zeller that she had to read the materials out loud to him. Ms. Zeller advised him that she had brought the materials he asked for and that she thought it would be better if he would read them for himself. Mr. Harden responded that he did not have to do anything and that he was not running a religious community.

- Complaint ¶ 71: In early October 2006, shortly after Mr. Harden became the new manager, Ms. Zeller noticed that she was missing several days of pay from her paycheck. She approached Mr. Griscom, the Assistant [M]anager, about this issue, and Mr. Griscom said he would take care of the problem. Shortly thereafter, she learned from Mr. Griscom that the problem had not been fixed because Mr. Harden had refused to authorize the correction. When Ms. Zeller asked Mr. Harden about this problem, his attitude was hostile and dismissive.

- Complaint ¶ 75: Shortly thereafter, on or about October 14, 2006, Ms. Zeller became ill in the booth, with vomiting and diarrhea. Ms. Zeller was concerned not only about her own health but about the health of the customers and other employees with whom she was directly interacting. Ms. Zeller told the Assistant Manager, Mr. Griscom, and he contacted Mr. Harden to ask him for permission for Ms. Zeller to leave. Mr. Harden denied Ms. Zeller permission to leave. Ms. Zeller contacted her husband, who then called Mr. Harden and again requested that she be permitted to leave work due to her health condition. Mr. Harden was hostile towards Ms. Zeller's husband over this issue, but ultimately permitted Ms. Zeller to leave. Ms. Zeller was subsequently rushed to the hospital by a coworker and was diagnosed with severe dehydration. She was so sick that she was unable to return to work until October 18, 2006.

- Complaint ¶ 76: When she returned to work, although the missing hours in her paycheck had been fixed, Mr. Harden's harassment of Ms. Zeller escalated. He made more frequent mocking and derogatory comments about her religion, asked her repeatedly to clean the men's bathroom, and even stated on one occasion that "Maybe you should scrub the walls, too." No other women were asked to clean the bathrooms or scrub the walls. Mr. Harden often followed such instructions with taunting comments like, "Oh, I forgot, you can't do that, you're Muslim."

- Complaint ¶ 77: In or about October 2006, Ms. Zeller asked for two hours off to attend Ramadan prayers. Mr. Harden refused, stating "I'm going to tell you right now, you're not getting off." Ms. Zeller explained to Mr. Harden that she needed the time for religious observance. After Mr. Harden initially told Ms. Zeller that she could "Do it on your own time," Ms. Zeller replied that she was willing to take the two hours of time away unpaid and then return to work, and that there were plenty of employees available to allow for this. Mr. Harden then changed his mind and told Ms. Zeller that she could not take even unpaid leave to attend to her religious requirements, and told here that if she took two hours off of work to attend prayer she would be fired. In order to attend prayer, Ms. Zeller was thus forced to miss an entire day of work and lose a day of pay.

### C.    Paragraph 40 of the Complaint Is Immaterial to Plaintiff Romdhani's Causes of Action and Prejudices the Defendant

After noting that Plaintiff Romdhani filed a charge of discrimination with the Delaware Department of Labor ("DDOL"), paragraph 40 of the Complaint states both that (i) the DDOL concluded Plaintiff Romdhani has a cause of action and (ii) Defendant did not participate in DDOL-sponsored mediation. While the existence of a DDOL charge is material to the Complaint to prove compliance with the requirements of Title VII, the actual proceedings before the DDOL and the agency's determination are not relevant and are prejudicial to the Defendant. *See Defazio v. River City Brass Band, Inc.*, 2007 WL 3072257, at *2 (W.D. Pa. Oct. 19, 2007) (finding that references in the complaint to "the [Equal Employment Opportunity Commission's ('EEOC')] first determination" and "the failure of the conciliation" should be stricken pursuant to Fed. R. Civ. P. 12(f) as immaterial and scandalous). In *Defazio*, the court recognized that while a separate determination would have to be made as to whether an agency's findings were permissible at trial under Fed. R. Evid. 403, the EEOC's findings were immaterial to stating a

cause of action under Title VII. *Id.* Similarly, the court held that references to conciliation meetings or mediations proposed by an agency were immaterial to stating a cause of action under Title VII. *Id.*

Because an agency determination ultimately has no bearing under the law on whether Plaintiff Romdhani has a cause of action under Title VII, but such a finding is plainly prejudicial to Defendant ExxonMobil, references to the DDOL or EEOC's findings should be stricken from the Complaint.

### D. Paragraphs 50, 51, 69, 70, 76, and 77 of the Complaint Are Immaterial to Plaintiffs Maloney and Zeller's Causes of Action and Prejudice the Defendant

In Paragraphs 50, 51, 69, 70, 76, and 77, Plaintiffs Maloney and Zeller set forth allegations that, if true, could conceivably support a claim for religious discrimination or failure to accommodate religion under Title VII. However, Plaintiffs Maloney and Zeller do not assert a cause of action under Title VII. Instead, they claim both discrimination and retaliation under Section 1981, which states that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

By its terms, Section 1981 only applies to claims of discrimination based on race, not religion. *See also Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (Section 1981 only covers only racial discrimination, not discrimination based on nation of origin or religion). For a court to properly decide a motion to strike, the cause of action must first be framed so that the contested allegations can be evaluated in context. *See Burger v. Health Ins. Plan of Greater*

*New York*, 684 F.Supp. 46, 52 (S.D.N.Y. 1988). Here, Plaintiffs Maloney and Zeller's allegations must be evaluated in the context of their claims for racial discrimination. Even assuming *arguendo* that the allegations regarding religious accommodations contained in the contested paragraphs are true, they would still be immaterial to a claim of discrimination based on race. Moreover, because they portray Defendant ExxonMobil in a negative light, they are prejudicial and must be struck under Fed. R. Civ. P. 12(f).

This case presents circumstances similar to those at issue in *Kounitz v. Slaatten*, 901 F. Supp. 650 (S.D.N.Y. 1995). In support of a complaint of sex discrimination, the plaintiff in *Kounitz* listed numerous negative allegations about her employer, including use of profanity and excessive demands on employees. *Id*. at 657. The court, however, properly noted that claims of generally abusive behavior unrelated to sex discrimination were immaterial to the complaint. *Id*. at 658 (granting the motion to strike because the allegations did not relate to the cause of action); *see also Burger*, 684 F. Supp. at 52 (holding that allegations of criminal misconduct in billing were not relevant to plaintiff's cause of action for sex discrimination and rejecting the notion that general allegations of wrongdoing are relevant to show the nature of the work environment). Similarly, allegations of improper behavior with respect to religion are ultimately irrelevant to Plaintiffs Maloney and Zeller's claims of racial discrimination. In fact, in the six contested paragraphs, Plaintiffs refer to religion or religious accommodation 13 times, but do not refer to racial discrimination even once. Paragraphs 50, 51, 69, 70, 76, and 77 have no bearing on Plaintiff Maloney and Zeller's Section 1981 claims, are prejudicial to Defendant ExxonMobil, and should be stricken.

**E.      Paragraphs 71 and 75 of the Complaint Are Immaterial to Plaintiff Zeller's Causes of Action and Prejudice the Defendant**

Paragraphs 71 and 75 of the Complaint allege facts that, as a matter of law, cannot be used to support a claim of either discrimination or retaliation under Section 1981. In Paragraph 71, Plaintiff Zeller complains that, at some point in October 2006, a few days of pay were missing from her paycheck and that the mistake was not immediately corrected. However, Zeller acknowledges that, at the latest, the problem was corrected by October 18, 2006, when she returned from sick leave. Compl. ¶ 76. Similarly, in Paragraph 75, Plaintiff Zeller complains that the Station Manager initially denied her request to go home on sick leave before ultimately granting her request on the very same day. Because, in both instances, the subject of Zeller's complaint was ultimately resolved in her favor in short order, these allegations provide no basis for either a discrimination or retaliation claim under Section 1981.

To establish a *prima facie* case of racial discrimination or retaliation, a plaintiff must allege that, *inter alia*, she was subject to an adverse employment action. *See Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797 (3d Cir. 2003) (Title VII requires that a plaintiff show "he/she was subject to an adverse employment action despite being qualified"); *Lewis v. Univ. of Pittsburgh*, 725 F.2d 910, 915 n.5 (3d Cir. 1983) (claims under Section 1981 require the same elements of proof as those under Title VII ); *Andreoli v. Gates*, 482 F.3d 641, 649 (3d Cir. 2007) ("In order to prevail on a claim for retaliation under Title VII, an employee must prove that . . . her employer took an adverse employment action after or contemporaneous with the protected activity"); *Verdin v. Weeks Marine, Inc.*, 124 Fed. Appx. 92, 97 (3d Cir. 2005) (Section 1981 claims of retaliation are analyzed under the same standards as Title VII claims).

An adverse employment action is defined as "an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of

employment.'" *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 763 (3d Cir. 2004) (internal citations omitted).    Examples of "adverse employment actions" include "firing, failing to promote, reassignment with significantly different responsibilities, or a significant change in benefits." *Toll v. American Airlines, Inc.*, 166 Fed. Appx. 633, 636 (3d Cir. 2006) (*citing Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *Christian v. Illinois Bd. of Educ*, 2007 WL 2088735, at *5 (N.D. Ill July 19, 2007) ("[a]n adverse action occurs when an employee is fired or demoted, suffers a decrease in benefits or pay, or is given a significantly lesser job"). "An action that merely causes an employee irritation or inconvenience, but does not affect a term, condition, or benefit of employment, is not an adverse employment action." *Spriggs v. Pub. Serv. Comm'n of Md.*, 197 F. Supp. 2d 388, 393 (D. Md. 2002).

In the present case, even taking the facts alleged in Paragraphs 71 and 75 as true, these allegations indicate no alteration in Plaintiff Zeller's compensation, terms or conditions of employment. Zeller alleges only that she was initially denied a compensation or a benefit, but was shortly thereafter made whole. It is well recognized that a momentary delay in the receipt of compensation or privileges does not constitute an adverse employment action. *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (delay in receiving performance evaluation did not affect plaintiff's pay grade or salary and thus did not constitute an adverse action); *Despanie v. Henderson*, 32 Fed. Appx. 390, 392 (9th Cir. 2002) (holding that where sick leave pay is ultimately provided, an initial denial of sick leave pay does not constitute an adverse employment action); *Cromwell v. Washington Metro. Area Transit Auth.*, 2006 WL 2568009, at *6 (D.D.C. Sept. 5, 2006) (plaintiff cannot establish a *prima facie* case of discrimination where an initial request denying sick leave is ultimately granted); *see also Christian* 2007 WL

15

2088735, at *6 (even outright denial of sick leave when done pursuant to established policy does not constitute an adverse employment action).

Zeller acknowledges that she ultimately, and in short order, received the benefits she allegedly was denied initially. Compl. ¶¶ 75, 76. Therefore, the alleged momentary denials do not constitute adverse employment actions. Forcing the parties to engage in discovery on these issues would result in a waste of resources and unnecessarily complicate the litigation. Moreover, although these allegations are immaterial to Plaintiff Zeller's claims, they prejudice Defendant ExxonMobil by casting the company in a negative light. A jury could, for example, seek to punish an employer who made an allegedly "severely dehydrated" employee wait even a minimal amount of time before her granting sick leave, even if under the law that fact does not support a claim of discrimination or retaliation.

Because the facts alleged in paragraphs 71 and 75 cannot support a *prima facie* case of discrimination or retaliation, those paragraphs should be stricken. Additionally, paragraphs 87 and 93 should be revised to reflect the fact that Plaintiff Zeller can not base her claims of discrimination and retaliation on being "denied" sick leave.

## **CONCLUSION**

WHEREFORE, for the reasons explained herein, Counts VII, VIII, and IX of the

Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) and paragraphs 40, 50, 51, 69, 70,

71, 75, 76, and 77 of the Complaint should be stricken under Fed. R. Civ. P. 12(f).


OF COUNSEL:

Joe Robert Caldwell, Jr.
Benjamin Kringer
Rachel M. McKenzie
BAKER BOTTS LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004-2400
(202) 639-7700

Dated:  December 20, 2007
839159

POTTER ANDERSON & CORROON LLP

By   */s/ Kathleen Furey McDonough*
     Kathleen Furey McDonough (#2395)
     Sarah E. DiLuzio (#4085)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     P.O. Box 951
     Wilmington, DE 19801
     (302) 984-6000

Attorneys for Defendant
Exxon Mobil Corporation

## CERTIFICATE OF SERVICE

I hereby certify this 20th day of December that the foregoing was electronically filed with

the Clerk of the Court using CM/ECF which will send notification of such filing to the following

counsel of record that the document is available for viewing and downloading from CM/ECF:

Timothy J. Wilson, Esquire
Martin & Wilson, P.A.
1508 Pennsylvania Avenue
Wilmington, DE  19806


*/s/ Kathleen Furey McDonough*
Kathleen Furey McDonough (#2395)
Potter Anderson & Corroon LLP
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE  19801
(302) 984-6000
kmcdonough@potteranderson.com