IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SOFIENE ROMDHANI, MICHELLE MALONEY, and BOBBI JOE ZELLER, <br><br> Plaintiffs, <br><br> v. <br><br> EXXON MOBIL CORPORATION, <br><br> Defendant. | : <br> : <br> : <br> : <br> : <br> : Civil Action No. 07-715-LPS <br> : <br> : <br> : <br> : |

Debra S. Katz, Esquire; Avi Kumin, Esquire and Nicole J. Williams, Esquire of KATZ, MARSHALL & BANKS, LLP, Washington, D.C.
Barbara H. Stratton, Esquire of KNEPPER & STRATTON, Wilmington, Delaware.

Attorneys for Plaintiff.

Joe Robert Caldwell, Jr., Esquire; Benjamin Kringer, Esquire and Heather M. Souder, Esquire of BAKER BOTTS LLP, Washington, D.C.
Kathleen Furey McDonough, Esquire and Sarah E. DiLuzio, Esquire of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware.

Attorneys for Defendant.

**MEMORANDUM OPINION**

November 10, 2010
Wilmington, Delaware

*[signature]*

**Stark, U.S. District Judge:**

Pending before the Court is a Motion To Strike Portions Of Plaintiffs' Affidavits And Memorandum Of Law In Support ("Motion") (D.I. 95) filed by Defendant, Exxon Mobil Corporation ("ExxonMobil" or "Exxon"). For the reasons discussed, the Court will grant in part and deny in part the Motion.

## I. THE PARTIES' CONTENTIONS

Plaintiffs filed this employment discrimination action against ExxonMobil under 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq.; and 19 Del. C. § 710, et seq., alleging unlawful discrimination based on race (Arab), religion (Muslim), and national origin (Tunisian), retaliation, and harassment based upon a hostile work environment. By its Motion, ExxonMobil requests that the Court strike portions of the affidavits submitted by Plaintiffs in support of their Answering Brief to ExxonMobil's Motion For Summary Judgment. Specifically, ExxonMobil contends that portions of the affidavits contain inadmissible hearsay, raise new factual allegations, are not based upon personal knowledge, and set forth conclusions of law. ExxonMobil contends that, to the extent the affidavits contain inadmissible evidence, they cannot be used to create a genuine issue of material fact so as to preclude the grant of summary judgment.

Plaintiffs have filed an Answering Brief to the Motion To Strike, contending that the statements in the affidavits are admissible for the purpose of adjudicating ExxonMobil's summary judgment motion and, therefore, should not be stricken. The Court will address each of ExxonMobil's arguments in turn.

1

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(e), an affidavit used to support or oppose a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Statements of belief, no matter how sincere, may properly be subject to a motion to strike for failure to meet the personal knowledge requirement. *See Fowler v. Tillman*, 97 F. Supp. 2d 602, 607 (D.N.J. 2000) ("Affidavits speculating as to motivations but containing no factual support do not conform to the rule, and statements prefaced by the phrases, 'I believe' or 'upon information and belief' . . . are properly subject to a motion to strike.") (internal quotation marks omitted). As the Third Circuit has explained, "the affiant must ordinarily set forth facts, rather than opinions or conclusions. An affidavit that is 'essentially conclusory' and lacking in specific facts is inadequate to satisfy the movant's burden." *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985) (citation and internal quotations omitted). However, the United States Supreme Court has "rejected the view that the non-moving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## III. DISCUSSION

### A. Whether The Statements Identified By ExxonMobil Should Be Stricken As Hearsay

ExxonMobil identifies twenty-four statements in the affidavits that it contends are inadmissible hearsay. (D.I. 95 at 3-6) For example, ExxonMobil contends that the following eight paragraphs are hearsay:[1]

1. I asked other Station Managers within the same territory about the requirement to work seven days a week, and *they told me* that they were never required to work seven days a week and, to their knowledge, none of the other managers were required to work seven days a week. My wife who was also an Exxon employee, used to work for Hunny Delancy, another station Manager within the territory, and *she told me that* Ms. Delancy did not work on Sundays. Romdhani Decl. B015-16, ¶ 48.

2. *Ms. Maloney informed me* that when she asked Ms. Muwakkil about the complaint, she told Ms. Maloney and another Station employee, Richard Payne, that she had not wanted to file it, but that Mr. Arnold had pressured her to do so. *Ms. Maloney further informed me* that Ms. Muwakkil further acknowledged that Mr. Arnold had actually filled out the paperwork for her and promised her job benefits in return if she filed this baseless charge of discrimination against me. Romdhani Decl. B014, ¶ 44.

3. *I spoke with my co-workers* about Mr. Romdhani on occasion, and my coworkers, Muslim and non-Muslim alike, generally shared this same positive view of Mr. Romdhani and his work. Maloney Decl. B024, ¶ 5.

\* \* \*

6. Because of my conversion, *several Exxon employees expressed to me their belief that* I had become more closely associated with Mr. Romdhani, since Mr. Romdhani was also Muslim. Maloney Decl. B026, ¶ 13.

\* \* \*

---

[1] For ease of reference, the Court will use the numbering as it appears in ExxonMobil's Motion To Strike (D.I. 95) throughout this Memorandum Opinion.

3

10. *One of my fellow employees*, Redoune Lakharz, an Arab-American Muslim, *told me* that Ms. Muwakkil had called him a "terrorist" and yelled at him to "go back to his country." *Other Muslim employees told me* that they complained to Mr. Romdhani about Ms. Muwakkil's discriminatory and inappropriate behavior. Zeller Decl. B050-51, ¶ 8.

\* \* \*

12. *I spoke with several other Arab and Muslim employees about [the graffiti], and they expressed to me that they, too, were extremely offended.* Although Mr. Romdhani informed me that he reported this incident to Mr. Arnold, neither Mr. Arnold nor Exxon Management ever contacted me about the incident to see whether I knew anything about which employee had written the discriminatory writing. *I spoke to several other Muslim employees* about this issue, and none of them had been interviewed by Exxon management, either. Maloney Decl. B029, ¶ 22.

\* \* \*

14. While [Mr. Arnold and I] were speaking, I called over Richard Payne, a non-Muslim Cashier/Sales Associate, and asked him whether he believed Mr. Romdhani had given preferential treatment to Muslim employees. *Mr. Payne told Mr. Arnold that this accusation was unfounded*, and that he believed Mr. Romdhani had treated everyone fairly. *Mr. Payne also told me* in a different conversation that he had never in his many years at Exxon seen a Regional Territory Manager who so heavily scrutinized the work of a Station Manager as Mr. Arnold did with respect to Mr. Romdhani. Maloney Decl. B034, ¶ 33.

15. *Mr. Lakharz told me at the time* that he had submitted to Mr. Harden the application of an Arab-American Muslim friend of his, but that when Mr. Harden had seen the name of the applicant, he immediately asked whether the applicant was Muslim. *Mr. Lakharz told me that* when he informed Mr. Harden that the applicant was Muslim, Mr. Harden responded by saying, "No, no no, I don't need anymore Muslims in here." *Mr. Lakharz later told me* that Mr. Harden claimed to have faxed his friend's application to Exxon's Human Resources office for review, but that when he and his friend later met with a representative from HR who had

4

> come to interview potential employees, she stated that she had never received his friend's application from Mr. Harden. Maloney Decl. B039, ¶ 45.

(D.I. 95 at 3-5) (italics in original).

Hearsay evidence produced in an affidavit supporting or opposing summary judgment "may be considered if the out-of-court declarant could later present the evidence through direct testimony, i.e. 'in a form that would be admissible at trial.'" *Williams v. Borough of West Chester*, 891 F.2d 458, 466 n.12 (3d Cir. 1989). While the out-of-court statements are hearsay to the extent they are offered for the truth of the matter asserted, there is no indication that the individuals referred to in the declarations "would not be able to testify at trial. Thus, there is no reason why the statement [the affiants] testified to during [their] sworn testimony at issue cannot be considered to defeat summary judgment." *Guilfoil v. Pierce*, 2009 WL 688957, at *8 (D. Del. Mar. 16, 2009); *Cherry v. Pro-Solutions for Chiropractic, Inc.*, 2009 WL 3052269, at *2 n.4 (W.D. Pa. Sept. 22, 2009). Hence, for purposes of assessing ExxonMobil's pending Motion For Summary Judgment, the Court will consider the evidence in the record that ExxonMobil seeks to strike as hearsay.

In addition, the Court concludes that many of the statements identified by ExxonMobil are not hearsay, in that the statements are not offered for the truth of the matter asserted, but, instead, to circumstantially demonstrate the purportedly discriminatory nature of the work atmosphere. *See Ryder v. Westinghouse Elec. Corp*, 128 F.3d 128, 134 (3d Cir. 1997); *EEOC v. Schott North America, Inc.*, 2009 WL 310897, at *4 (M.D. Pa. Feb. 5, 2009). For example, the statement by Plaintiff Maloney that other workers assumed she was more closely associated with Plaintiff Romdhani after her religious conversion is not offered for the truth of the matter

5

asserted – i.e. that Plaintiff Maloney had actually grown closer to Mr. Romdhani – but to demonstrate the purportedly discriminatory assumptions by the out-of-court declarants, evidence which a reasonable factfinder could take to demonstrate the nature and atmosphere of the workplace. Similarly, Mr. Harden's statement that he "didn't need any more Muslims in here," is not offered for the truth of the matter asserted – i.e., that more Muslim employees were not needed at the Station – but to demonstrate Mr. Harden's purportedly discriminatory attitudes and behavior. Accordingly, the Court will deny the Motion as it pertains to statements evidencing the alleged discriminatory nature and atmosphere of the workplace.[2]

### B. New Factual Allegations

ExxonMobil also requests that the Court strike five paragraphs from Plaintiff Maloney's affidavit and three from Plaintiff Zeller's affidavit which ExxonMobil contends inappropriately raise new factual allegations that were not disclosed previously in the Second Amended Complaint, during Plaintiffs' depositions, or at any point during discovery. The identified paragraphs concern allegations that: (1) Mr. Arnold urged Plaintiff Maloney to file a gender discrimination complaint against Plaintiff Romdhani, Maloney Decl. B025, ¶ 9; (2) Plaintiff Maloney personally heard and/or was told by others that Mr. Coleman referred to Muslims as

---

[2] ExxonMobil attempts to distinguish *Ryder* and *Schott* on the grounds that the statements in those cases were made by supervisors and not other "rank and file employees." Notably, ExxonMobil does not make the same argument with respect to Mr. Harden's statements, evidently acknowledging that those statements were made by a supervisor. Moreover, in *Schott*, only two of the three declarants were supervisors, yet the court in that case concluded that all three statements were not hearsay (as they were circumstantial evidence of discriminatory attitudes and atmosphere). While the statements made by "rank and file employees" may ultimately be deserving of less weight by the jury if and when this matter is tried, the Court is not persuaded that the job title of the declarant governs whether the statements may be considered in evaluating a motion for summary judgment.

"Ali Baba," "towelheads," and "ragheads," and Plaintiff Zeller was told by a co-worker that Romdhani gave her preferential treatment with a shift change because she "had a towel wrapped around [her] head," Maloney Decl. B37, ¶ 39; Zeller Decl. B052, ¶ 11; (3) Mr. Harden would not allow employees of the Station to speak to investigators from the Delaware Department of Labor ("DDOL") unless he was present, Maloney Decl. B039, ¶ 46; Zeller Decl. B062, ¶ 36; (4) Mr. Harden and Mr. Arnold cornered Plaintiff Maloney in her booth to intimidate and harass her on an almost daily basis, Maloney Decl. B040-041, ¶¶ 49, 51; and (5) Mr. Harden assigned and forced Plaintiff Zeller to perform and redo unnecessary tasks like dusting the shelves in the Station, Zeller Decl. B064, ¶ 41.

In support of its argument, ExxonMobil directs the Court to several cases, primarily from courts in other districts (and none of which are binding on this Court), that have stricken or refused to consider "new" facts in the context of summary judgment. (D.I. 95 at 6-7) (collecting cases) These cases appear to have been motivated by a concern that the new factual allegations gave rise to entirely new legal claims or theories of relief. For example, in *Bassiouni v. CIA*, 2004 WL 1125919, at *8-9 (N.D. Ill. Mar. 31, 2004), the court granted summary judgment despite plaintiff's allegation that the CIA improperly possessed information concerning his First Amendment activities because this allegation was not raised in the plaintiff's complaint. Although the *Bassiouni* court references the newly raised material in terms of "facts" that were raised in the briefing but had not been raised in the complaint, it is evident that the court's focus was not simply on the concern that the factual allegations were "new," but rather on the concern that the facts related to a new legal theory that was not in the complaint and for which leave to

amend was never sought.³ Similarly, in *Mabon v. United States Steel Corp.*, the court's primary concern was that the "new" factual allegations did not relate to the claims already alleged. 2010 WL 107232, at *6-7 (N.D. Ind. Jan. 7, 2010). ExxonMobil also cites *Krouse v. American Sterilizer Co.*, 984 F. Supp. 891, 914 (W.D. Pa. 1996) (citing numerous reasons for striking affidavit, including that it "inappropriately raises new allegations"), aff'd, 126 F.3d 494 (3d Cir. 1997), but the Court agrees with Plaintiffs that the "new facts" were stricken in *Krouse* primarily because the affidavit in which they were contained was untimely, contained inadmissible evidence, and was not incorporated by Krouse's brief.

Here, by contrast, the factual allegations ExxonMobil seeks to strike do not state a new claim or legal theory but, instead, directly relate to and support the initial claims made by Plaintiffs in the Second Amended Complaint. Plaintiffs are held only to the notice pleading standard and are not required to plead every factual allegation supporting their claims. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (reiterating that a complaint need only provide "enough facts to state a claim to relief that is plausible on its face"). Because the facts identified by ExxonMobil in the affidavit are consistent with the overall allegations in the Second Amended Complaint and do not raise any new claims or theories of

---

³The Court's interpretation of *Bassiouni* is further supported by the cases relied upon in *Bassiouni*, which the *Bassiouni* court characterizes as precluding a party from raising an "argument" or "theory" for the first time in response to a summary judgment motion. 2004 WL 1125919, at *9 (collecting cases). "New" arguments and theories are different from "new" factual allegations. *See generally Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 ("Once a claim has been stated adequately, it may be supported by showing *any set of facts* consistent with the allegations in the complaint.") (emphasis added).

relief, the Court is not persuaded that they should be stricken.[4]

        C.      <u>Personal Knowledge</u>

ExxonMobil next identifies nine paragraphs from the affidavits which it seeks to strike because they are not based upon personal knowledge. (D.I. 95 at 10-12) The following five paragraphs are representative of this argument by ExxonMobil:

> 1. *It was clear to the Station employees* that Mr. Arnold was excessively scrutinizing me and trying to catch me not performing my job duties in order to set me up for termination. Romdhani Decl. at B010, ¶ 32.
>
> 2. *I believe* that Mr. Romdhani resigned from his position because Mr. Arnold was deliberately undermining his authority and preventing him from doing his job because of his race and religion. . . *I believe* that Mr. Romdhani was essentially forced out of his job. Maloney Decl. B030-31, ¶ 26.
>
> 3. *It was clear to* me and *the rest of the Station employees* that Mr. Arnold was excessively scrutinizing Mr. Romdhani and trying to set him up for termination. Zeller Decl. B051, ¶ 9.
>
>                           \* \* \*
>
> 6. As the harassment increased, I and *other Muslim employees became concerned about our jobs*, as we feared, that we would be terminated due to retaliation or dislike of Muslims. Hsi Decl. B080, ¶ 14.
>
> 7. *It is my understanding that* Mr. Harden failed to complete the proper worker's compensation paperwork and when Ms. Maloney later filed a worker's compensation claim and submitted proper medical documentation, Mr. Harden denied that she had been injured on the job. Hsi Decl. B080, ¶ 16.

(D.I. 95 at 11) (italics in original).

---

[4] ExxonMobil contends that the sole purpose of the "new" factual allegations is to create genuine issues of material fact so as to defeat summary judgment. However, the Court's ultimate decision on the issue of summary judgment will not turn on these factual assertions alone, but on the record as a whole.

Reviewing the identified paragraphs in the context of the affidavits in which they are contained, and in light of the applicable legal principles, the Court concludes that the identified paragraphs should be stricken to the extent they purport to express motivations, opinions, and views of individuals other than the affiants. Affidavits must be made upon personal knowledge, and affidavits that speculate as to motivations are not permissible. *See Fowler*, 97 F. Supp. 2d at 607 (striking, based on lack of personal knowledge, statements such as, "I believe that the reason proceedings were brought against us was because our tenants were in recovery" and "I felt this alleged violation was just another attempt to drive the tenants out of town"). For example, Mr. Hsi can state that he felt concerned about his job and feared retaliation, but he cannot express what other Muslim employees may have thought. Plaintiff Maloney can state her observations that she saw Mr. Arnold undermine Plaintiff Romdhani's authority as a manager, but she cannot speculate as to Mr. Romdhani's reasons for resigning from his position. Mr. Romdhani's motivations for resigning are his own and must be declared through his own statements based upon his personal knowledge and observations. Accordingly, the Court will strike the paragraphs identified by ExxonMobil, to the extent they are not based on the personal knowledge of the affiant and instead speculate as to the views and motivations of individuals other than the affiant.

### D. Ultimate Facts or Legal Conclusions

ExxonMobil identifies twenty-one paragraphs from the declarations submitted by Plaintiffs which it contends should be stricken as conclusory and unsupported. (D.I. 95 at 12-15) The identified paragraphs fall into three broad categories: (1) statements that it was "reasonable" for Plaintiffs Romdhani and Maloney to resign in light of the alleged discrimination and harassment; (2) statements evaluating the legitimacy or alleged pretext of ExxonMobil's

disciplinary decisions; and (3) statements that Mr. Arnold and Mr. Harden treated Arab and Muslim employees more harshly based on their race or religion. The following four examples are representative of the paragraphs identified by ExxonMobil:

1. Further, *there is no legitimate business reason* for requiring me to work seven days a week because the prior Station Manager before me, Manny Dominguez, was never made to work seven days a week. The fact that the Station was a 'big box' store on Interstate 95 did not require that Mr. Dominguez work seven days a week. *Mr. Arnold was singling me out to work non-stop, every day of the week because of his animus towards my race (Arab) and religion (Islam).* Romdhani Decl. B015, ¶ 46.

2. *It thus appeared to me that Exxon management had no intention* of conducting a complete investigation and learning which employee was responsible [for the graffiti] or in taking any disciplinary action in response. Maloney Decl. B029, ¶ 22.

3. Had I been in Mr. Romdhani's position as Manager of the Station and been subjected to the same mistreatement due to my race, religion, or national origin, I also would have felt compelled to resign my position, and *I think any reasonable person would have done the same thing under those circumstances.* Maloney Decl. B031, ¶ 26.

* * *

6. On every previous occasion that I had received a written warning, I was informed about the problem immediately, because Exxon policy requires that a manager inform the employee about the problem when they are given a write-up. Because of this, *I believe that Mr. Harden placed these write-ups into my file and into Ms. Zeller's file in order to try to justify his termination of Ms. Zeller.* Maloney Decl. B043, ¶ 56.

(D.I. 95 at 12-13) (emphasis in original).

"The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). Affidavits or deposition testimony setting forth unsupported facts or legal

11

conclusions are insufficient to create a genuine issue of material fact so as to defeat summary judgment. *See Queer v. Westmoreland County*, 296 Fed. Appx. 290, 294 (3d Cir. 2008); *see also Securities and Exchange Commission v. Bonastia*, 614 F.2d 908, 914 (3d Cir. 1980) ("Denials in the form of legal conclusions, unsupported by documentation of specific facts are insufficient to create issues of material fact that would preclude summary judgment."). In the Court's view, the paragraphs identified by ExxonMobil express the affiant's beliefs and opinions based upon detailed factual descriptions of the allegedly harassing incidents. Accordingly the Court does not find the statements in the identified paragraphs to be conclusory, and therefore, the Court will deny the Motion as it pertains to these statements.

## IV. CONCLUSION

For the reasons discussed above, the Court will grant in part and deny in part ExxonMobil's Motion To Strike. Specifically, the Motion is **DENIED** to the extent ExxonMobil challenges identified paragraphs of Plaintiffs' affidavits as hearsay, "newly" raised evidence, and stating ultimate facts or legal conclusions, and the Motion is **GRANTED** to the extent it pertains to paragraphs identified by ExxonMobil as based upon a lack personal knowledge by the affiant. An appropriate Order will be entered.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SOFIENE ROMDHANI, MICHELLE : 
MALONEY, and BOBBI JOE ZELLER, :
:
Plaintiffs, :
:
v. : Civil Action No. 07-715-LPS
:
EXXON MOBIL CORPORATION, :
:
Defendant. :

# ORDER

At Wilmington, this 10th day of November 2010, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that the Motion To Strike Portions Of Plaintiffs' Affidavits And Memorandum Of Law In Support (D.I. 95) filed by Defendant, Exxon Mobil Corporation, is **DENIED** to the extent Defendant challenges identified paragraphs of Plaintiffs' affidavits as hearsay, "newly" raised evidence, and stating ultimate facts or legal conclusions, and **GRANTED** to the extent it pertains to paragraphs identified by ExxonMobil as based upon a lack personal knowledge by the affiant.

_____
UNITED STATES DISTRICT JUDGE